UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ALAN KAUFMAN, | : | |
| PLAINTIFF, | : | |
| | : | CIVIL ACTION NO. 3:11cv1874(VLB) |
| | : | |
| v. | : | OCTOBER 16, 2012 |
| | : | |
| ALL SEASONS MARINE WORKS, INC. | : | |
| ET AL | : | |
| DEFENDANTS. | : | |

MEMORANDUM OF DECISION GRANTING DEFENDANTS' [DKT. ##10,12]
MOTIONS TO DISMISS AND DENYING PLAINTIFF LEAVE TO AMEND [Dkt.#20]

The Plaintiff, Alan Kaufman, proceeding *pro se*, brings this action against

Defendants, All Seasons Marine Works, Inc. ("All Seasons") and Middlesex

Marine Sales and Repair LLC ("Middlesex") and against individual Defendant,

Theodore O'Neill, Jr., President and Manager of All Seasons alleging breach of

contract (Count I), breach of covenant of good faith and fair dealing (Count II),

violation of vessel lien statute (Count III), violation of the constitutional right to

petition (Count IV), violation of procedural due process (Count V), rescission

(Count VI), violation of the Connecticut Unfair Trade Practices Act (Count VII), and

for punitive damages (Count VIII).   Middlesex and All Seasons have both moved

to dismiss Plaintiff's complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of

subject matter jurisdiction and Fed. R. Civ. P. 12(b)(6) for failure to state a claim

arguing that Plaintiff has failed to state a cognizable federal claim against the

Defendants.   Plaintiff has moved to amend his complaint which has been

opposed by the Defendants on the grounds that any amendment would be futile.

For the foregoing reasons, the Court GRANTS Defendants' motions to dismiss

Plaintiff's federal law claims and DENIES Plaintiff leave to amend for futility as discussed below. Plaintiff may pursue his state law claims in Connecticut superior court.

<u>Background and Factual Allegations</u>

The following facts and allegations are taken from Plaintiff's complaint. The Plaintiff lives in Darien, Connecticut. All Seasons has its main place of business in Rowayton, Connecticut and Middlesex has its main place of business in Portland, Connecticut. Plaintiff alleges that the Defendants are citizens of Connecticut and the principal acts and events occurred in Connecticut. [DKT #5, Amended Compl., ¶¶1-4,7].

Around May 2001, the Plaintiff purchased a 20 foot boat, a LTS 20 model manufactured by Hydra Sports for $15,100. The Plaintiff used the boat for several years and at the conclusion of every season, winterized and stored the boat at All Seasons. *Id.* at ¶9-12. From 2004 to 2009, the boat, shrink wrapped and winterized, remained in storage, until the Plaintiff contacted All Seasons in the spring of 2009 requesting that the boat be prepared for use in June of that year. *Id.* at ¶13-14. However, All Seasons never responded. When the Plaintiff attempted to update the boat's registration in January 2010, the Registry notified the plaintiff that he no longer owned the boat. *Id.* at ¶14-15. O'Neill told the Plaintiff that he would supply all the documentation relating to the sale. *Id.* at ¶18. After several months had passed, the Plaintiff again requested the documents and learned from O'Neill that there had been unpaid invoices and that

after two years All Seasons had placed a lien on the boat and sold it at auction. *Id.* at ¶19-20.

The Plaintiff contacted the Department of Environmental Protection, the Marine Vessel division, and was "told that there was no documentation that would have been required to have been filed for boats classified as abandoned." *Id.* at ¶22.  The Plaintiff checked with the office of the Connecticut's Secretary of State and discovered no record of a lien on the boat. *Id.* at 23.

The Plaintiff then filed a formal request with the Marine Vessel division and received documentation relating to the sale.  *Id.* at ¶25.  The documentation revealed that the boat had been sold on January 7, 2006 to Middlesex.  *Id.* at ¶26.  Plaintiff alleges that the documents bore the forged signature of Plaintiff.  *Id.* at ¶¶27-30.

On June 18, 2006, Middlesex sold the boat to Mr. Brian Johnson for a price of $10,000 where the bill of sale had two allegedly forged signatures of the Plaintiff.  A DMV-Form Q1, required for a bill of sale between Middlesex and Mr. Johnson, also had a purportedly forged signature of the Plaintiff.  *Id.* at ¶35.  Plaintiff alleges that none of the Defendants executed a DMV Form B-203 which is required for the lawful sell of the boat because it requires the Defendants to certify that the owner could not be located and to explain why the Plaintiff's owner signature could not be obtained for a transfer by normal and lawful sale.  *Id.* at ¶¶37-38.

In Count IV of the amended complaint, the Plaintiff asserts a cause of action for violation of his constitutional right to petition.  *Id.* at ¶62-69.  Plaintiff

alleges that under Connecticut law the right to petition is set forth in Conn. Gen. Stat. §49-55b and "incudes the right of the owner of a vessel subject to a lien to petition the superior court to dissolve the lien." *Id.*   Plaintiff further alleges that All Seasons filed a lien and obtained authority from the State of Connecticut to conduct a sale and was therefore acting "under color of state law." *Id.*   Plaintiff contends that by "failing to give timely notice to the plaintiff, that defendant All Seasons, acting under color of state law, deprived the plaintiff of his constitutional right to petition" and that by "acting under color of state law and purporting to conduct an auction in a manner that deprived the plaintiff of his right to petition, the defendant All Seasons violated the plaintiff's constitutional rights under the First Amendment." *Id.*

In Count V, the Plaintiff asserts a cause of action for violation of procedural due process.  The Plaintiff alleges that the sale of his property "under color of state law and without adequate notice and without conforming to the requirements for such sale as set forth by statute deprived the plaintiff of property without due process of law in violation of the Fourteenth and Fifth Amendments." *Id.* at ¶¶70-75.   The Plaintiff further alleges that if Conn. Gen. Stat. §§49-55a et seq. had "been followed notice in the town in which the boat resided should have been given and where there was no notice the defendants deprived plaintiff of his property without due process of the law." *Id.*

<u>Legal Standard</u>

The standards of review for a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction and under 12(b)(6) for failure to state a claim are

"substantively identical." *Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d. Cir. 2003). However, on a motion to dismiss under Rule 12(b)(1), the party invoking the Court's jurisdiction bears the burden of proof to demonstrate that subject matter jurisdiction exists, whereas the movant bears the burden of proof on a motion to dismiss under Rule 12(b)(6). *Id.* In deciding both types of motions, the Court "must accept all factual allegations in the complaint as true, and draw inferences from those allegations in the light most favorable to the plaintiff." *In re AIG Advisor Group Sec. Litig.*, 309 Fed. App'x. 495, 497 (2d Cir. 2009). "To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

The Court's review on a motion to dismiss pursuant to Rule 12(b)(6) is generally limited to "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). In addition, the Court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993). In deciding a motion to dismiss for lack of subject matter jurisdiction under Rule

12(b)(1), however, the Court "may resolve disputed factual issues by reference to evidence outside the pleadings, including affidavits." *State Employees Bargaining Agent Coal. v. Rowland*, 494 F.3d 71, 77 n.4 (2d Cir. 2007).

<u>Analysis</u>

i.     **Motion to Dismiss**

Defendants argue that Plaintiff's complaint must be dismissed for lack of subject matter jurisdiction as the Plaintiff has not plausibly pled that the Defendants, all private entities or persons, were acting under color of state law to maintain his federal law claims under Section 1983.   Defendants argue that because Plaintiff's Section 1983 claims in counts IV and V must be dismissed, the Court lacks subject matter jurisdiction to entertain Plaintiff's remaining state law claims as there is no diversity jurisdiction or other federal subject matter jurisdiction available.   Plaintiff argues that Defendants were acting under "color of state law" because they placed a lien and then sold his boat pursuant to a Connecticut state statute.   This Court agrees that the Plaintiff has failed to alleged facts demonstrating that the Defendants were acting under color of state law even construing the pro se complaint liberally.

"It is well settled that Section 1983 does not create any new substantive rights, but merely provides a federal cause of action for violations of certain federal rights." *Mrs. W. v. Tirozzi*, 832 F.2d 748, 754 (2d Cir.1987).   "To state a claim for relief in an action brought under § 1983, [a plaintiff] must establish that they were deprived of a right secured by the Constitution or laws of the United

States, and that the alleged deprivation was committed under color of state law." *Am. Mnfs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50, 119 S.Ct. 977, 143 L.Ed.2d 130 (1999) (internal quotations omitted). "Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action." *Flagg v. Yonkers Sav. & Loan Ass'n,* 396 F.3d 178, 186 (2d Cir.2005) (internal quotation marks omitted). "A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is thus required to show state action." *Tancredi v. Metro. Life Ins. Co.,* 316 F.3d 308, 312 (2d Cir.2003)

"[S]tate action requires both an alleged constitutional deprivation caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible, and that 'the party charged with the deprivation must be a person who may fairly be said to be a state actor. Conduct that is formally 'private' may become so entwined with governmental policies or so impregnated with a governmental character that it can be regarded as governmental action." *Fabrikant v. French*, 691 F.3d 193, 206-07 (2d Cir. 2012) (internal quotation marks and citations omitted). "But a private entity does not become a state actor for purposes of § 1983 merely on the basis of "the private entity's creation, funding, licensing, or regulation by the government. Rather, there must be such a close nexus between the [s]tate and the challenged action" that the state is *responsible* for the specific conduct of which the plaintiff complains." *Id.* (internal quotation marks and citations omitted).

The Second Circuit has explained that "Supreme Court cases on the subject of state action 'have not been a model of consistency,' and we therefore have 'no single test to identify state actions and state actors. Rather, there are a host of factors that can bear on the fairness of an attribution of a challenged action to the State.'" *Id.* at 207 (quoting *Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 491 (2d Cir. 2009)).   Three main tests have emerged to determine whether the "actions of a nominally private entity are attributable to the state ... (1) [when] the entity acts pursuant to the coercive power of the state or is controlled by the state ('the compulsion test'); (2) when the state provides significant encouragement to the entity, the entity is a willful participant in joint activity with the state, or the entity's functions are entwined with state policies ('the joint action test' or 'close nexus test'); or (3) when the entity has been delegated a public function by the state ('the public function test')."   *Id.* (citations omitted).

Here, the alleged conduct of the private Defendants in placing a lien and then selling the Plaintiff's boat pursuant to a valid Connecticut statute does not fall within any of these tests.  The Defendants were neither controlled by the state nor did they act pursuant to the coercive power of the state.  In addition, there is no allegation that the Defendants had been delegated a public function by the state.  Lastly, the Defendants did not act jointly with a state actor when they placed a lien and sold the Plaintiff's boat pursuant to a valid state statute.  It is well established that the "[p]rivate misuse of an otherwise valid state statute is not state action." *Kash v. Honey*, 38 Fed. Appx. 73, 76 (2d Cir. 2002) (citing *Dahlberg v. Becker*, 748 F.2d 85, 90 (2d Cir. 1984)); *Moher v. Stop & Shop*

*Companies, Inc.*, 580 F.Supp. 723, 725 (D. Conn. 1984) (holding that store did not act under color of state law by acting under state statute which allowed a shopkeeper to stop and detain any person reasonably believed to be committing larceny and noting that "[s]uch a claim has been repeatedly held to be jurisdictionally defective in a § 1983 action inasmuch as acting under such a statute does not transform tortious conduct by a private merchant into an action undertaken by the state or under color of law.) (internal quotation marks and citations omitted); *McCarthy v. Wachovia Bank, N.A.*, 759 F.Supp.2d 265, 277 (E.D.N.Y. 2011) (holding that private defendants seeking to restrain plaintiff's property pursuant to New York statute were not acting under color of state law); *Johnson v. Chemical Bank*, No.96Civ.4262(SS), 1996 WL 706893, at *5 (S.D.N.Y. Dec. 9, 1996) ("The mere fact that defendants utilized state statutes to pursue a state court remedy against the plaintiff does not constitute 'state action' by private parties.").

The Plaintiff argues that the Supreme Court's decision in *Lugar v. Edmonson Oil Co.,* 457 U.S. 922 (1982) controls here.  In *Lugar*, the Supreme Court held that a lessee who had obtained an ex parte writ of attachment pursuant to an unconstitutional state statute operated under color of state law because he acted jointly with a state actor when the writ of attachment was executed by a sheriff.   However, the Plaintiff's reliance on *Lugar* is misplaced. As the Second Circuit observed, "the Supreme Court [in *Lugar*] held that a private party who attaches a debtor's assets pursuant to a state's attachment statute would be subject to § 1983 liability *if the statute was found to be*

*unconstitutional.*"  *Pinsky v. Duncan*, 79 F.3d 306, 311 (2d Cir. 1996) (citing *Lugar*, 457 U.S. at 941) (emphasis added).  The Supreme Court's holding in *Lugar* was expressly contingent on the fact that the petitioner challenged the constitutionality of the state statute.  The Supreme Court unequivocally stated in *Lugar* that "private misuse of a state statute does not describe conduct that can be attributed to the state" and that only the "procedural scheme created by the statute obviously is the product of state action." 457 U.S. at 941.  Consequently, the Supreme Court in *Lugar* held that the "Petitioner presented a valid cause of action under §1983 insofar as he challenged the constitutionality of the Virginia statute; he did not insofar as he alleged only misuse or abuse of the statute."  *Id.* at 942.  Consequently, "*Lugar* does not preclude a § 1983 claim for misuse or abuse of an attachment statute after it has been declared unconstitutional." *Pinsky*, 79 F.3d at 312.   *Lugar* therefore holds that a private individual who uses a "state replevin, garnishment or attachment statute later declared to be unconstitutional acts under color of state law for § Section 1983 liability purposes." *Wyatt v. Cole*, 504 U.S. 158, 159 (1992).

Here, the Plaintiff has not challenged the constitutionality of Conn. Gen. Stat. §49-55 nor has another court declared it unconstitutional.  Instead, the Plaintiff has merely alleged the private misuse or abuse of Conn. Gen. Stat. §49-55 on the part of the Defendants which the Supreme Court has unequivocally stated does not describe conduct attributable to the state.  Since none of the alleged conduct by the Defendants can be deemed fairly attributable to the state, the Defendants did not act under color of state law and are not subject to Section

1983 liability.  The Court therefore dismisses Plaintiff's count IV and V Section 1983 claims.  Since the Court has dismissed Plaintiff's federal law claims, this Court lacks subject matter jurisdiction to entertain Plaintiff's state law claims for breach of contract, breach of covenant of good faith and fair dealing, violation of vessel lien statute, rescission, and violation of the Connecticut Unfair Trade Practices Act.  However, the Plaintiff may pursue these claims in state court.

  ii.    Motion to Amend

  Plaintiff has moved to amend his complaint after responding to Defendants' motions to dismiss.  However Plaintiff's proposed complaint fails for the same reasons as discussed above.  Rule 15 of the Federal rules of Civil Procedure provides that leave to amend the pleadings should be "freely give[n] ... when justice so requires." Fed.R.Civ.P. 15(a)(2).  "However, it is well established that leave to amend a complaint need not be granted when amendment would be futile." *Ellis v. Chao,* 336 F.3d 114, 127 (2d Cir.2003); *see also Jones v. New York State Div. of Military & Naval Affairs,* 166 F.3d 45, 50 (2d Cir.1999) ("[A] district court may properly deny leave when amendment would be futile."). "Where, as is the case here, a proposed amendment is in response to a motion to dismiss under Rule 12(b)(6), 'leave to amend will be denied as futile only if the proposed new claim cannot withstand a 12(b)(6) motion to dismiss for failure to state a claim, i.e., if it appears beyond doubt that the plaintiff can plead no set of facts that would entitle him to relief.' " *McLaughlin v. CitiMortgage, Inc.,* No.3:09–cv– 1762(MRK), 2010 WL 3037810, at *2 (D.Conn. Aug. 4, 2010) (quoting *Milanese v. Rust–Oleum Corp.,* 244 F.3d 104, 110 (2d Cir.2001)); *see also Tocker v. Philip*

*Morris Cos., Inc.,* 470 F.3d 481, 491 (2d Cir.2006).   Accordingly, Plaintiffs' proposed complaint will be considered under the familiar Rule 12(b)(6) standard.

Plaintiff contends that his proposed complaint details how the Defendants were acting in concert with "multiple departments of the State of Connecticut to deprive him of his property without due process of the law."   [Dkt. #20, p. 2]. However all of Plaintiffs' newly added allegations essentially boil down to the same contention that the Defendants were acting under color of state law because they were "authorized" to auction his boat pursuant to state statute. For example, Plaintiff alleges that O'Neill told him that the State of Connecticut "authorized us to auction the boat to settle the lien.  We performed this auction as prescribed by the statute."  See [Dkt. #20, Proposed Compl., ¶23].  Plaintiff further alleges that O'Neill conducted "the sale with the advance authorization and approval of the State of Connecticut, which implicates the State of Connecticut directly in the sale of the boat."  *Id.* at ¶75.  Lastly, Plaintiff alleges that "no lawful sale of a boat can be completed without the consent and cooperation of the State through the Department of Motor Vehicles" and that the Department of Motor Vehicles "accepts, reviews, and approves the sale of boats."  *Id.* at ¶¶76-77.  To the extent that the Plaintiff is implying that the State of Connecticut and the Department of Motor Vehicles knowingly condoned the fraudulent sale of his boat, the Plaintiff has failed to allege any specific facts that the State was aware that the Defendants had forged Plaintiff's signature or had other knowledge of the Defendants' fraudulent scheme.  All of Plaintiff's allegations in his proposed complaint simply describe the private misuse or abuse of a valid attachment

statute which cannot be attributed to the state.  It would therefore be futile to permit Plaintiff leave to amend his complaint.

Plaintiff further informs the Court in his motion to amend that after he obtains certain information through discovery he plans to amend his complaint yet another time to assert a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO") which will "set forth a pattern of boat theft undertaken by the defendants through the use of bogus auctions of boats and implemented through the use of forged documents, perjured filings with the Registry of Motor Vehicles and other felonious acts."   [Dkt. #20, p. 2].   However Plaintiff admits that at present "[a]lthough there is no basis under currently known facts to assert the claim, in view of this District's specific pleading requirements for RICO claims, it is being deferred until the completion of early discovery to avoid unnecessary motion practice."  *Id.* at 3.

Although the Court appreciates the pro se Plaintiff's understanding that he cannot assert a claim without a pleading a plausible factual basis for that claim, it is axiomatic that "discovery is unwarranted where it would function as a fishing expedition for evidence in search of a theory that has yet to be asserted."  *KBL Corp. v. Arnouts*, 646 F.SUpp.2d 335, 346 n. 6 (S.D.N.Y. 2009) (internal quotation marks and citation omitted); *Lituma v. United States*, No. 04 Civ. 8955, 2005 WL 1705088, at *2 (S.D.N.Y. July 18, 2005) ("Discovery is not intended to be a fishing expedition, but rather is meant to allow the parties to flesh out allegations for which they initially have at least a modicum of objective support.") (internal quotation marks and citation omitted).  "Indeed, allowing the plaintiff to conduct

discovery to piece together a claim would undermine the purpose of Federal Rule of Civil Procedure 12(b)(6), 'which is to streamline[] litigation by dispensing with needless discovery and factfinding' where the plaintiff has failed to state a claim under the law." *Id.* (quoting *Neitzke v. Williams*, 490 U.S. 319, 326-27 (1989)). Even if the Court did not find the proposed complaint futile, the Plaintiff would not have been permitted to conduct discovery in the hopes of piecing together a claim which could survive a Rule 12(b)(6) motion.  Lastly, the Court notes that Plaintiff would also be barred by the Eleventh Amendment from amending his complaint to bring suit against the state of Connecticut should he intend to do so. *See Ying Jing Gan v. City of New York*, 996 F.3d 522, 529 (2d Cir. 1993) (The Eleventh Amendment "bars federal courts from entertaining suits brought by a private party against a state in its own name").

<u>Conclusion</u>

Based upon the above reasoning, Defendant's [Dkt. #10,12] motion to dismiss is GRANTED and the Plaintiff's [Dkt. #20] motion for leave to amend his complaint is DENIED.  Because the Plaintiff's federal law claims are dismissed, the Court lacks subject matter jurisdiction to entertain Plaintiff's state law claims. The Plaintiff may pursue his state law claims in Connecticut Superior court.  The Clerk is directed to close the case.

IT IS SO ORDERED.

_____/s/_____
Hon. Vanessa L. Bryant

United States District Judge

**Dated at Hartford, Connecticut: October 16, 2012**